UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAEMON SCHOPPER,

                Plaintiff,

v.

JEFF HARDEN, *et al.*,

                Defendants.

_____/

Civil Action No. 25-10210

Jonathan J.C. Grey
United States District Judge

David R. Grand
United States Magistrate Judge

### REPORT AND RECOMMENDATION TO GRANT THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF No. 21)

On January 23, 2025, *pro se* plaintiff Daemon Schopper ("Schopper"), an incarcerated person, filed a civil rights complaint under 42 U.S.C. § 1983 against the following employees of the Michigan Department of Corrections ("MDOC"): Jeff Harden, Lee Gary, Michael Lantis, Regina Lowe, Jacob LaFave, Luis Adame, and Derik Curtis[1] (collectively, "Defendants"). (ECF No. 1).[2] At the time of the events at issue in this lawsuit, Schopper was incarcerated at the Parnall Correctional Facility ("SMT") in Jackson, Michigan. (ECF No. 1, PageID.1). Schopper alleges violations of his right to free speech under the First Amendment and his due process rights under the Fourteenth Amendment. (*Id.*).

---

[1] Although the docket spells Derik Curtis's name as Derrik, the Court will use the spelling "Derik," as provided by Defendants.

[2] Pursuant to 28 U.S.C. § 636(b), all pretrial matters have been referred to the undersigned. (ECF No. 10).

Now before the Court is Defendants' Motion for Summary Judgment, which was filed on July 31, 2025. (ECF No. 21).  Schopper filed a response to this motion on August 21, 2025 (ECF No. 23),[3] and Defendants filed a reply on September 9, 2025 (ECF No. 25). Generally, the Court will not hold a hearing on a motion in a civil case in which a party is in custody.  *See* E.D. Mich. LR 7.1(f).  Here, the Court finds that the facts and legal issues are adequately presented in the parties' briefs and on the record, and it declines to order a hearing at this time.

## I.      RECOMMENDATION

For the reasons set forth below, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 21)** be **GRANTED**.

## II.     REPORT

### A.      Factual Background

The events giving rise to Schopper's complaint began on March 7, 2024, when he "was working as a law library clerk" at SMT and allegedly "witnessed Michael Lantis verbally abusing an elderly African-American prisoner very loudly."  (ECF No. 1, PageID.3).  Schopper writes that "[he] then witnessed [Librarian] Jeff Harden walkout [sic] into the hallway to converse with Michael Lantis.  Jeff Harden quickly returned and started to look through the prisoner callout in order to kick the prisoner out of the law library

---

[3] Schopper also filed a one-page "Statement of Disputed Factual Issues" in response to Defendants' motion.  (ECF No. 24).  This filing merely identifies three questions Schopper believes are relevant: "1. Whether the defendants have provided all evidence necessary for the court to make an informed decision.  2. Whether the plaintiff followed all the administrative processes involved in the exhaustion before filing a claim.  3. Whether the misconduct was appealed properly." (*Id.*). Regardless, the Court has considered this filing.

because he was racially abused." (*Id.*).  Schopper then began "to tell his co-worker quietly about the racial injustice and retaliation that plaintiff had just witnessed" and Harden told Schopper "you can't talk!"  (*Id.*).  Schopper describes the rest of the conversation as follows:

> Plaintiff then quietly, when seated, replied I can talk about racism and Prisoners rights if I want." Jeff Harden then states "ok you can about whatever you want but you can't talk about that." Referring to Plaintiff using his freedom of speech to speak to his co-worker about witnessing corrections officers and prison staff violating constitutionally protected rights. Plaintiff then replies "This is America, I can talk about you and Lantis violating a Prisoners [sic] rights because of the First Amendment Right to Freedom of Speech." Plaintiff was then told by Jeff Harden to leave the law library.

(ECF No. 1, PageID.4).

After Schopper left the library, he wrote a grievance describing the above interaction.  (*Id.*).  When he turned in the grievance, "[he] was informed by Correctional Officer Kline, that [he] was fired for 'whatever happened in the law library by Harden.'"  (*Id.*).  Later that day, Schopper found out that Harden wrote him a misconduct for his behavior in the library.  (*Id.*).  As a result of the misconduct, Schopper was barred from the law library for 120 days.  (*Id.*, PageID.5).

In his complaint in this case, Schopper alleges that he was repeatedly harassed in retaliation for writing the grievance.  First, Schopper alleges that on March 8, 2024, he received a misconduct by Corrections Officer ("CO") Regina Lowe who told him that "she wrote the misconduct because Plaintiff wrote a grievance on Jeff Harden and Michael Lantis."  (*Id.*, PageID.4).  Next, Schopper alleges that on March 9, 2024, Michael Lantis verbally harassed him, saying to Schopper "what are you some type of [f-slur]!? [W]hy are

3

you helping that [n-word]!? Keep doing that and you won't make it home!" (*Id.*, PageID.5).

On March 15, 2024, Schopper was "called to [the] control center to be heard on a misconduct for the March 7, 2024 incident." (ECF No. 1, PageID.5). Schopper alleges that Louis Adame, who was the reviewing officer, told him, "If you stop writing grievances it'll help you out." (*Id.*). On April 7, 2024, Schopper was found guilty of the March 7, 2024 misconduct. (*Id.*). Schopper appealed the misconduct decision and Jacob Lafave denied the appeal. (*Id.*, PageID.5-6).

On July 7, 2024, Schopper alleges another incident of retaliation occurred in response to his March 7, 2024 grievance against Harden and Lantis. Schopper alleges that Derick Curtis, who was conducting the Internal Affairs investigation related to the March 7th incident, forced Schopper to sign a "false statement," telling him, "you better sign this if you know whats [sic] good for you." (ECF No. 1, PageID.6).

Finally, Schopper alleges that on January 3, 2025,[4] he "was told by assistant librarian Lee Gary that he refuses to make copies for Plaintiff, so he can file this complaint because 'of his Indigency and because Hardens [sic] name is on it.'" (ECF No. 1, PageID.6). It is unclear from the complaint what copies Schopper wanted.

## B.    Standard of Review

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

---

[4] The complaint says "January 3, *2024*," not 2025, but the sequence of events only makes sense if Schopper intended to write "2025." (ECF No. 1, PageID.6) (emphasis added).

4

judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga Cty. Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (internal quotations omitted). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact but must make an affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (internal quotations omitted).

### C.    Analysis

In their motion, Defendants argue that Schopper failed to properly exhaust his administrative remedies regarding all the claims in this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). (ECF No. 23). For the reasons

set forth below, the Court agrees.

### 1.      *The PLRA's Exhaustion Requirement*

Under the PLRA, a prisoner may not bring an action, "under [§ 1983] or any other Federal law," to challenge his conditions of confinement until all available administrative remedies have been exhausted.  42 U.S.C. § 1997e(a); *Woodford v. Ngo*, 548 U.S. 81, 85 (2006).  This "exhaustion" requirement serves two main purposes: it promotes efficiency by encouraging the resolution of claims at the agency level before litigation is commenced, and it protects administrative authority by allowing the agency an opportunity to correct its own mistakes before being haled into federal court.  *See Woodford*, 548 U.S. at 89.  The Supreme Court has held that this "exhaustion requirement requires proper exhaustion." *Id.* at 93.  Proper exhaustion requires "compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90.  Failure to exhaust is an affirmative defense that must be raised by a defendant, and on which the defendant bears the burden of proof.  *See Jones v. Bock*, 549 U.S. 199, 216 (2007); *Vandiver v. Corr. Med. Servs., Inc.*, 326 F. App'x 885, 888 (6th Cir. 2009).

### 2.      *The MDOC's Exhaustion Procedures*

In determining whether a plaintiff has properly exhausted his claim, the only relevant rules "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 200.  In Michigan's correctional facilities, prisoner grievances are governed by MDOC Policy Directive 03.02.130, entitled "Prisoner/Parolee Grievances" (the "Policy").  (ECF No. 21-2).  A state prisoner must first complete the process outlined in the Policy – including pursuing a grievance through "all three steps of the grievance

process" – before he can file a lawsuit challenging the alleged unlawful conduct. (*Id*. at ¶ C). The Policy provides that if a prisoner cannot resolve his dispute with the staff member involved, he has five business days to file a Step I grievance. (*Id*. at ¶¶ W). If the prisoner is dissatisfied with the Step I response, he may submit a grievance appeal to the Step II Grievance Coordinator within ten business days after receipt of the Step I response, or if no timely response is received, within ten business days of the date the response was due. (*Id*. at ¶ JJ). If the grievant is dissatisfied with, or does not receive, a Step II response, he has ten business days within which to file a final appeal at Step III. (*Id*. at ¶ NN). Again, an inmate may only pursue a claim in court if he has complied with his obligations at each of these three steps. (*Id.* at ¶ C).

### 3. *Schopper Fails to Raise a Material Question of Fact as to Whether He Properly Exhausted a Grievance Against Defendants*

Both sides agree that Schopper filed five grievances related to the issues in his complaint, and that he appealed these to Step II of the grievance process. (ECF No. 21-4, PageID.110-122; ECF No. 23, PageID.142). In its summary judgment motion, the MDOC demonstrates that it has no record of any Step III grievance appeals filed by Schopper from March of 2024 to at least the filing of Defendants' instant motion. (ECF No. 21-3, PageID.103; ECF No. 23, PageID.103).

Although the MDOC's record reflects that Schopper filed no Step III grievances after the relevant incident, Schopper alleges that he did try to file Step III grievances. However, as discussed below, Schopper fails to provide sufficient evidence to raise a material question of fact that he filed any relevant Step III grievance appeals. And, even

if the Court credits the evidence that Schopper offers to show he filed his Step III grievances, he would still fail to overcome Defendants' motion because that evidence shows the related Step III grievances would have been filed untimely.

First, as to the issue of whether Schopper filed the Step III grievances, Schopper attaches to his response brief two fairly illegible "Disbursement Authorization" forms (ECF No. 23, PageID.144-45), which he refers to as "legal mail receipt[s]." (ECF No. 23, PageID.140, 145).[5]  While neither party clarifies the Disbursement Authorization form's exact function, it appears to authorize a disbursement of funds from a prisoner's account to pay for legal mail.  The forms identify Daemon Schopper by his full name, prisoner identification number, and cell number.  (ECF No. 25-2, PageID.162, 164).  Each form also includes the "Date & Time Submitted" and the "Date & Time Received by Authorizing Staff," as well as the name and signature of the staff member who received the form and the name and signature of the person who placed it in the mail.  (*Id.*). Additionally, they include the cost of postage.  (*Id.*).  Therefore, the Court understands these forms to be the evidence Schopper is supplying to support his contention that he submitted his Step III grievances.[6]

Yet, the Disbursement Authorization forms do not contain enough information to

---

[5] Defendants provide legible copies of the forms, so the Court will cite to those.  (ECF No. 25-2, PageID.162, 164).

[6] Schopper writes in his response brief that he "sent proof to the defendants during concurrence that he sent out all the required step 3 grievances to the directors [sic] office as outlined in the policy directive 03.02.130 sec. OO which states 'The Grievance Section shall be the respondent for Step III grievances on behalf of the director.'" (ECF No. 23, PageID.137).  However, Schopper does not specify what "proof" he is referring to, and he did not attach anything to his response other than the aforementioned Disbursement Authorization forms.

raise a material question of fact that he actually filed any Step III grievances.  Numerous cases have held that where an inmate claims to have filed a grievance but the defendant supplies evidence showing that the MDOC's grievance identifier system has no record of it, the inmate must at least produce some evidence – such as a copy of the grievance – that can serve as reasonable proof that he in fact filed one.  *See, e.g., Sango v. Bastian,* No. 2:15-cv-106, 2016 WL 3040772, at *2 (W.D. Mich. Apr. 1, 2016) ("Plaintiff has not attached any of the goldenrod copies to his response brief and has made no attempt to show that he actually tried to grieve the issues involved in this complaint."); *Valdes v. Evans,* No. 20-6095, 2021 WL 7627520, at *3 (6th Cir. Oct. 29, 2021) (prisoner did not show that he exhausted his administrative remedies as a matter of law because he failed to submit records of his alleged grievances into the district court record); *McSwain v. West,* No. 20-12684, 2021 WL 6066354, at *7 (E.D. Mich. Sept. 27, 2021) (prisoner did not raise a question of material fact as to whether he properly exhausted administrative remedies because he did not submit any evidence showing that he filed any relevant grievances); *Thorne v. S. Cent. Corr. Facility,* No. 1:14-0001, 2015 WL 1190159, at *4 (M.D. Tenn. Mar. 13, 2015) (plaintiff failed to satisfy his burden of showing exhaustion under the PLRA because he "fail[ed] to provide copies of the purported grievance or otherwise support his contention that he filed a grievance with any type of documentation.").  Otherwise, an inmate could circumvent the exhaustion requirement simply by falsely alleging that his grievance was lost or stolen, and the exhaustion requirement would become meaningless.

The Disbursement Authorization forms Schopper provided merely show, at most, that he received a disbursement for a certain amount of money to send unspecified mail to

9

the Director's Office.  (ECF No. 25-2, PageID.162, 164).  The forms do not indicate, one way or another, what he mailed, let alone that he mailed the Step III grievances at issue in this case.  Thus, they do not raise a material question of fact as to that matter.

Second, even if the Court were to assume that Schopper attempted to mail the relevant Step III grievances using the Disbursement Authorization forms at issue, summary judgment would still be appropriate in the Defendants' favor because those forms show that any such Step III grievances would have been untimely.  The evidence shows that Schopper received all five Step II rejections on April 29, 2024.  (ECF No. 21-4, PageID.110, 113, 116, 119, 122).  According to MDOC policy, he was required to file each of his Step III grievance appeals within ten business days of receiving the respective Step II responses.  (ECF No. 21-2, PageID.99).  Therefore, Schopper had until May 13, 2024, to send out his Step III appeals.  However, according to Schopper's own evidence, he submitted one Disbursement Authorization form on May 14, 2024, and the other on May 29, 2024, both more than ten business days after he received the Step II responses.  (ECF No. 25-2, PageID.162, 164).  Thus, even crediting Schopper's own evidence, his Step III appeals were tardy, which is another basis for concluding that he did not properly exhaust the claims raised in the respective grievances, and that summary judgment is warranted in Defendants' favor.

## III.   CONCLUSION

For the reasons set forth above, **IT IS RECOMMENDED** that Defendants' Motion for Summary Judgment **(ECF No. 21)** be **GRANTED**.

Dated: February 26, 2026                         s/David R. Grand
Ann Arbor, Michigan                              DAVID R. GRAND
                                                 United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation, any party may serve and file specific written objections to the proposed findings and recommendations set forth above. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1). Failure to timely file objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have. *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006). Copies of any objections must be served upon the Magistrate Judge. *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy. *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1). Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 26, 2026.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager